IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MARYLAND

JERRY W. MULLINS,

    Plaintiff

v.

SUBURBAN HOSPITAL
HEALTHCARE SYSTEMS, INC., et al.

    Defendants

Civil Action No. PX-16-1113
*consolidated with PX-16-1114*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SUBURBAN HOSPITAL HEALTHCARE SYSTEMS, INC.'S MOTION TO DISMISS

Defendant, Suburban Hospital Healthcare System, Inc., by and through counsel, Michael von Diezelski and LeClairRyan, P.C., and in support of its Motion to Dismiss the Plaintiff's Amended Complaint, files this Memorandum of Points and Authorities.

### I.   FACTUAL BACKGROUND

Plaintiff Jerry W. Mullins brings this action claiming a violation of The Emergency Medical Treatment and Active Labor Act (EMTALA) as well as commission of medical malpractice. Exh. 1, Amended Complaint. This case arises from medical care Plaintiff received at Suburban Hospital ("Hospital") on April 15, 2014 to treat an injury Plaintiff sustained to his right hand. Exh. 1 at ¶¶ 9, 16. Plaintiff was transported to Hospital by ambulance. *Id.* at ¶ 13. When he presented to the Hospital, Plaintiff was provided appropriate medical examinations by a Physician Assistant and an Emergency Room Physician. *Id.* at ¶¶ 16–37. Plaintiff insisted he be transported to the Curtis National Hand Center in Baltimore even though the Hospital could not secure a transfer approval from the transferee facility or make a determination that Plaintiff's hand injury had been stabilized for transfer. *Id.* at ¶ 29.

Plaintiff's injury was treated at the Hospital with a surgical procedure completed by an orthopedic surgeon. *Id.* at ¶ 38. Plaintiff's claims of an EMTALA violation and medical malpractice are based on these events. Even when Plaintiff's factual allegations and claims are evaluated in the light most favorable to Plaintiff, along with every reasonable inference, the facts presented by Plaintiff fail to state an EMTALA claim upon which this Court can grant relief; therefore, dismissal of Count I—Plaintiff's EMTALA claim—is warranted as a matter of law.

Furthermore, in regards to the remaining claim—"Medical Negligence & Medical Malpractice"— Plaintiff has failed to abide by the mandatory procedural requirements of Maryland Courts and Judicial Proceedings Art., § 3-2A-01, et. seq., ("The Maryland Health Care Malpractice Claims Act," or hereinafter "the Act" as codified in the Maryland Code, Courts & Judicial Proceedings Article § 3-2A-01, et seq.), and has therefore failed to satisfy a condition precedent to filing this claim in this Court, thereby denying this Court jurisdiction to hear this matter. Therefore, Count II must be dismissed.

## II. LEGAL ARGUMENT

### A. Standard of Review

A motion to dismiss under Rule 12(b)(1) permits a party to contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In this situation, solely for purposes of Defendant's present motion, Plaintiff's factual allegations "are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Complaint "requires a showing, rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A motion to dismiss for failure to state a claim under Rule 12 (b)(6) of the Federal Rules of Civil Procedure must be granted when the facts of the complaint, and all reasonable inferences arising from those facts, do not support a claim for relief even when viewed in the light most favorable to the plaintiff. *Eastern Shore, Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). Consideration may only be given, however, to allegations of fact and inferences deducible from them, as opposed to merely conclusory charges. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference"). Moreover, this Court need not accept the legal conclusions drawn from a plaintiff's factual allegations, nor need it accept as true unwarranted inferences, unreasonable conclusions or arguments. *Eastern Shore*, 213 F.3d at 180. A complaint will survive a Rule 12(b)(6) motion to dismiss only if it sets forth enough facts to state a claim for relief that is plausible on its face and the factual allegations are sufficient to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

    **B. <u>Plaintiff's EMTALA Claim Fails to State a Claim Upon Which Relief Can Be Granted</u>.**

    **(a) The History and Requirements of EMTALA**

In 1986, Congress enacted the Emergency Medical Treatment & Labor Act (EMTALA) to ensure public access to emergency services regardless of ability to pay. *See*

*Baber v. Hospital Corp. of America*, 977 F.2d 872 (1992). The EMTALA provisions were enacted to address a growing concern to prevent 'patient dumping,' which is defined as the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized. *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994). The Act accordingly imposes two principal obligations on hospitals. First, it requires that when an individual seeks treatment at a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination…to determine whether or not an emergency medical condition" exists. *See* 42 U.S.C. § 1395dd(a). Second, if the screening examination reveals the presence of an emergency medical condition, the hospital ordinarily must "stabilize the medical condition" before transferring or discharging the patients. 42 U.S.C. § 1395dd(b)(1); *see also Vickers v. Nash General Hospital, Inc.*, 78 F.3d 139 (4th Cir. 1996). The EMTALA statute is otherwise referred to as the "anti-dumping" statute, as its goal was to prevent hospitals from "dumping" indigent patients on other facilities due to their financial limitations. In short, EMTALA was enacted to prevent disparate treatment of patients presenting with emergency medical conditions.

Federal courts have routinely noted that EMTALA is an "anti-dumping" statute and is not a federal malpractice statute. *See e.g., Bryan v. Rector & Visitors of Univ. of Va.*, 95 F.3d 349, 351 (4th Cir. 1996). It does not impose any duty on a hospital requiring that the screening result in a correct diagnosis. *Id.* Federal courts have noted that EMTALA is not a malpractice statute and its "avowed purpose...was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care." *Baber v. Hospital Corp. of America*, 977 F.2d 872, 880 (4th Cir.1992). Rather, Congress deliberately left the

4

establishment of malpractice liability to state law, limiting EMTALA's role to imposing on a hospital's emergency room the duty to screen all patients as any paying patient would be screened and to stabilize any emergency condition discovered. *Id.* at 879; *see also Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1039 (D.C.Cir.1991). "Questions regarding whether a physician or other hospital personnel failed properly to diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery." *Baber*, 977 F.2d at 880.

### (b) EMTALA Does Not Apply To The Facts of The Amended Complaint as Plaintiff Was Evaluated, Stabilized and Treated in the Emergency Department at Suburban Hospital.

Plaintiff contends that Defendant violated EMTALA because the Hospital failed to transfer him to another facility as a result of his hand injury. The Plaintiff's reliance on EMTALA is unfounded against Defendant Suburban Hospital Healthcare System, Inc. This named Defendant is a health system organized as a non-profit organization under the laws of the State of Maryland. As stated in the Amended Complaint, the Plaintiff sustained an injury and was transported by ambulance to the Hospital. Under EMTALA, Plaintiff is strictly limited in how he can seek recovery. See 42 U.S.C. § 1395dd(d)(2)(A) providing that "any individual who suffers personal harm as a direct result of a [Medicare] participating hospital's violation of a requirement of this section may, in a civil action against the [Medicare] participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." (emphasis added). Here, because Defendant is not a hospital participating as a Medicare provider, nor is it a hospital at all, EMTALA does not grant Plaintiff with a cause of action against Defendant.

Further, the Hospital did not violate EMTALA based on the facts alleged by Plaintiff. As stated above, EMTALA requires: (1) an appropriate medical screening examination, 42 U.S.C. § 1395dd(a); and (2) stabilization of a patient's emergency medical condition or an appropriate transfer, 42 U.S.C. § 1395dd(b)(1)(A)–(B). Plaintiff's Amended Complaint states that he was examined by a Physician Assistant as well as an Emergency Room Physician at the Hospital on April 15, 2014. Exh. 1 ¶¶ 16–37. The Plaintiff claims he insisted that he be transported to the Curtis National Hand Center in Baltimore.[2] *Id.* at ¶ 22. The Hospital's Emergency Department contacted an orthopedic surgeon who was available for a consultation at Suburban Hospital. *Id.* at ¶ 37. The orthopedic surgeon, Dr. James Gosha[3] [sic], stated "Yeah, I can fix that" and took the patient to surgery at 7:30 p.m. for his injured finger on April 15, 2014. *Id.* at ¶ 38.

There is no dispute that the patient was examined in the Emergency Department of Suburban Hospital, was stabilized in the Emergency Department, was evaluated by an orthopedic surgeon in the Emergency Department and had surgery performed that same day at the Hospital. These facts, as a matter of law, are insufficient to state a cause of action for a violation of EMTALA against Defendant, or even against the Hospital, because the Plaintiff received an appropriate medical screening examination and was eventually stabilized following consultations and a surgical procedure. For these reasons, this Court must Dismiss Count I of the Amended Complaint.

### C. **Plaintiff's Medical Negligence Action Fails to State a Jurisdictional Claim Upon Which Relief Can Be Granted.**

(a) **Plaintiff's Failure to Comply with the Act Mandates Dismissal.**

---

[2] The Curtis National Hand Center has a location at MedStar Union Memorial Hospital.
[3] Dr. James Gasho is a licensed orthopedic surgeon in Maryland.

Plaintiff alleges that Defendant was medically negligent and committed medical malpractice by failing to medically treat in accordance with the applicable standards of care. *See* Exh. 1 at ¶¶ 62–73. Plaintiff's complaint fails to satisfy the requirements of the Act. In short, Plaintiff has failed to follow the mandatory statutory requirement that the claim initially be filed in the Health Care Alternative Dispute Resolution Office and comply with the mandatory procedures set forth in the Act, *See* MD. CODE, CTS. & JUD. PROC. TITLE 3, SUBTITLE 2A—HEALTH CARE MALPRACTICE CLAIMS. The General Assembly has clearly expressed a strong public policy through passage of the Act forty (40) years ago and several amendments to the Act since passed. In 1976, a Medical Malpractice Insurance Study Committee, formed to report to the General Assembly, proposed legislation to reform medical malpractice litigation in Maryland. *See, Medical Malpractice Insurance Study Committee Report to the President of the Senate and the Speaker of the House: January 6, 1976*. Martin S. Becker, Chair, Md Y3.Ma 25:2/B/ 1976. The Committee's report proposed a specific legislative structure which would establish "a mechanism to screen malpractice claims prior to the filing of suit." *Group Health Association v. Blumenthal*, 453 A.2d 1198, 1204 (Md. Ct. App. 1983) (quoting the Committee Report). This mechanism was established to meet several important government interests, including reducing the cost of litigation by ferreting out unmeritorious claims. *Lewis v. Waletzky*, 576 F. Supp.2d 732, 736 (D. Md. 2008). Reducing the costs of litigation would serve the important interest of decreasing malpractice insurance and a reduction in overall health care costs. *Id.* As the Court of Appeals stated in *Carrion v. Linzey*, the General Assembly legislated in support of "a strong preference to dispose of a majority of medical malpractice cases in the arbitration system and minimize the number of cases brought to trial in the traditional tort system." 675 A.2d 527, 535 (Md. Ct. App. 1996).

Stated frankly, the Act "reflects the Maryland General Assembly's desire to weed out, shortly after suit is filed, non-meritorious medical malpractice claims." *D'Angelo v. St. Agnes Healthcare, Inc.*, 853A.2d 813, 822 (Md. Ct. Spec. App. 2000), *cert denied*, 862 A.2d 993 (Md. Ct. App. 2004) (emphasis added).

The Act's procedure has been judged so important that Maryland's Appellate courts have consistently concluded that compliance with the procedures set forth in the Act is mandatory and a precondition to recovery. *See, e.g.*, *Robinson v Pleet*, 544 A.2d 1 (Md. Ct. Spec. App. 1988); *D'Angelo v St. Agnes Healthcare, Inc.*, 853 A.2d 813 (Md. Ct. Spec. App. 2004); and *Walzer v Osbourne*, 911 A.2d 427 (Md. Ct. App. 2006). Plaintiff has not complied with this mandatory procedure. Therefore, Count II of the Amended Complaint must be dismissed as a matter of law.

### III. CONCLUSION

WHEREFORE, for the aforementioned reasons, Defendant Suburban Hospital Healthcare System Inc., respectfully requests that this Honorable Court grant Defendant's Motion to Dismiss and dismiss Plaintiff's Amended Complaint as to Defendant.

Respectfully submitted,

LECLAIRRYAN

By: */s/ Michael E. von Diezelski*
Michael von Diezelski – Bar# 23863
180 Admiral Cochrane Drive
Suite 520
Annapolis, MD 21401
Telephone:   410-224-3000
Facsimile     410-224-0098
***Counsel for Defendant Suburban Hospital Healthcare System, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of August, 2016 the foregoing was served, via first class mail, postage prepaid, upon:

Jerry W. Mullins
7031 Southerland Circle
Salem, Virginia 24153
*Pro se Plaintiff*

Erica C. Mudd, Esq.
Armstrong Donohue Ceppos Vaughan and Rhoades Chtd.
204 Monroe Street, Ste 101
Rockville, Maryland 20850
*Counsel for Defendants Jules Alexander Feledy, Jr., M.D., Bethesda Emergency Associates, LLC and Matthew Leonard, M.D.*

Jennifer Elenbaas Phillips, Esq.
Daniel C. Costello, Esq.
Wharton Levin Ehrmantraut and Klein
104 West Street PO Box 551
Annapolis, Maryland 21404
*Counsel for Defendants The Union Memorial Hospital Inc., MedStar Health, Inc., and River Elliott, M.D.*

Mary Alane Downs, Esq.
Steffany K. Bender, Esq.
Morgan Carlo Downs and Everton PA
Executive Plz III, Ste 400
11350 McCormick Road
Hunt Valley, Maryland 21031
*Counsel for Neil Zimmerman, M.D.*

*/s/ Michael E. von Diezelski*
Michael E. von Diezelski