# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERRY W. MULLINS | * | |
|    Plaintiff | * | |
| v. | * | Civil Action No.: 16-cv-1113-PX |
| | | (*consolidated with PX-16-1114*) |
| THE UNION MEMORIAL HOSPITAL INC., d/b/a MedStar Union Memorial Hospital | * * | |
|    and | * | |
| MEDSTAR HEALTH, INC., | * | |
|    and | * | |
| RIVER ELLIOTT, M.D. | * | |
|    and | * | |
| NEIL ZIMMERMAN, M.D. | * | |
|    Defendants | * | |

\*   \*   \*   \*   \*   \*   \*

## DEFENDANTS THE UNION MEMORIAL HOSPITAL, INC., MEDSTAR HEALTH, INC., AND RIVER ELLIOTT, M.D.'S PRELIMINARY MOTION TO DISMISS AMENDED COMPLAINT

COME NOW the Defendants, The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D., by and through counsel, Daniel C. Costello, Esq., and Jennifer E. Phillips and Wharton Levin Ehrmantraut & Klein, PA, and pursuant to the United States District Court for the District of Maryland Rules of Civil Procedure, Federal Rules 12(b)(1) and (6), as well as Maryland Courts and Judicial Proceedings Art., § 3-2A-01, et. seq., ("The Maryland Health Care Malpractice Claims Act, as codified in the Maryland Code, Courts & Judicial

1

Proceedings Article 3-2A-01, *et seq*.), file this Preliminary Motion to Dismiss, and in support thereof state as follows:

1. Plaintiff's Amended Complaint contains two Counts against these Defendants: Count I ("Violations of Federal EMTALA[1] Law") and Count II ("Medical Negligence and Medical Malpractice").

2. The Plaintiff has failed to state a claim upon which relief can be granted as EMTALA does not apply to the facts and circumstances at issue in this case. Accordingly, Defendants move to dismiss Count I of Plaintiff's Amended Complaint.

3. Moreover, Defendant Dr. River Elliott should be dismissed as a matter of law as EMTALA does not permit a private cause of action against a physician.

4. Furthermore, the Plaintiff has failed to state a "Medical Negligence and Medical Malpractice" claim captioned as Count II of the Amended Complaint as the Defendants never treated the Plaintiff.

5. Finally, even assuming the Plaintiff has stated a claim for "Medical Negligence and Medical Malpractice" this court lacks jurisdiction due to the plaintiff's failure to file the medical malpractice claim with the Maryland Health Claims Alternative Dispute Resolution Office pursuant to the Maryland Courts and Judicial Proceedings Art., § 3-2A-01, et. seq., as a condition precedent prior to the institution of this court action.

WHEREFORE, for the aforementioned reasons, and the reasons set forth more fully in the accompanying Memorandum of Points and Authorities, which is incorporated fully herein by reference, Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D., respectfully request that this Honorable Court grant this Preliminary Motion to Dismiss and Dismiss Plaintiff's Amended Complaint.

---

[1] The Emergency Medical Treatment and Active Labor Act, codified as 42 U.S.C. 1395dd(a).

Respectfully submitted,


/s/ Jennifer E. Phillips
Daniel C. Costello, Esquire
Maryland Federal Bar No.: 08010
*dcc@wlekn.com*
Jennifer E. Phillips, Esquire
Maryland Federal Bar No.: 15167
*jep@wlekn.com*
Wharton, Levin, Ehrmantraut & Klein, P.A.
104 West Street
Annapolis, MD 21404-0551
(410) 263-5900 (ph)
(410) 280-2230 (fax)
*Counsel for Defendants*
*The Union Memorial Hospital, Inc.,*
*MedStar Health, Inc., and River Elliott, M.D.*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 17th day of August, 2016 the foregoing was served, electronically and via first class mail, postage prepaid, upon:

Jerry W. Mullins
7031 Southerland Circle
Salem, VA 24153
*Pro se Plaintiff*

Mary Alane Downs, Esquire
Morgan Carlo Downs & Everton, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
*Counsel for Defendant*
*Neil Zimmerman, M.D.*

Michael von Diezelski, Esquire
LeClair Ryan
180 Admiral Cochrane Dr., Suite 520
Annapolis, MD 21401
*Counsel for Defendant Suburban Hospital Healthcare*
*System Inc.*

Erica C. Mudd, Esq.
Armstrong, Donohue, Ceppos, Vaughan and Rhoades, Chtd.
204 Monroe Street, Suite 101
Rockville, MD 20850
*Counsel for Defendants Feledy, Jr., M.D., Bethesda Emergency Associates, L.L.C., and*
*Leonard, M.D.*

        /s/ Jennifer E. Phillips
        Jennifer E. Phillips, Esquire
        Maryland Federal Bar No.: 15167

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERRY W. MULLINS | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: 16-cv-1113-PX |
| | | (*consolidated with PX-16-1114*) |
| THE UNION MEMORIAL HOSPITAL INC., d/b/a MedStar Union Memorial Hospital, et. al. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS THE UNION MEMORIAL HOSPITAL, INC., MEDSTAR HEALTH, INC., AND RIVER ELLIOTT, M.D.'S PRELIMINARY MOTION TO DISMISS AMENDED COMPLAINT**

Defendants, The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D., by and through counsel, Daniel C. Costello, Esq., Jennifer E. Phillips, Esq., and Wharton Levin Ehrmantraut & Klein, PA., by and through undersigned counsel and in support of this Motion to Dismiss Amended Complaint, file this Memorandum of Points and Authorities.

I.     **FACTUAL BACKGROUND**

The *pro se* Plaintiff Jerry W. Mullins brings this action claiming a violation of The Emergency Medical Treatment and Active Labor Act (EMTALA) as well as medical malpractice. *See* Amended Complaint as <u>Exhibit 1</u>. The Plaintiff filed a separate Amended Complaint in this court regarding the same facts titled: <u>Mullins v. Suburban Hospital Healthcare Systems, Inc., et. al.</u>, Case No. 16-cv-01113-PX. These cases have been consolidated as captioned above. These cases arise from the Plaintiff's care and treatment that took place at

Suburban Hospital on April 15, 2014. *See* Amended Complaint Exhibit 1 at ¶ 8. The Plaintiff sustained an injury to his finger and was transported by ambulance to Suburban Hospital. *See* id. at ¶¶ 12, 47 & 51. The Plaintiff was examined by a Physician's Assistant as well as an Emergency Room physician at Suburban Hospital on April 15, 2014. *See* id. at ¶¶ 16, 17 & 35. The Plaintiff claims he insisted that he be transported to the Curtis National Hand Center in Baltimore. *See* id. at ¶¶ 20 & 21. The Emergency Room contacted an orthopedic surgeon who was available for a consultation at Suburban Hospital. *See* id. at ¶¶ 35 & 36. The Plaintiff was examined by an orthopedic surgeon in the Emergency Room at Suburban Hospital on April 14, 2015. *See* id. at ¶ 36. The orthopedic surgeon Dr. James Gosha[2] [sic] stated "Yeah, I can fix that" and took the patient to surgery at 7:30 p.m. on April 15, 2014. *See* id. at ¶ 36. The Plaintiff claims medical malpractice as a result of the finger surgery performed by Dr. James Gasho and a violation of EMTALA for the above-listed events.

At no time did the Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., or River Elliott, M.D. render any care and treatment to the Plaintiff. Defendants contend that there are no facts that render the EMTALA claims applicable to the facts as listed in the Amended Complaint and dismissal of Count I (EMTALA) is warranted as a matter of law. Furthermore, as the Defendants never treated the plaintiff, there is no valid claim for medical malpractice as to Count II.

**II.  LEGAL ARGUMENT**

  **A. Standard of Review**

A motion to dismiss under Rule 12(b)(1) permits a party to contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In this situation, "the facts alleged in the complaint are

---
[2] Dr. James Gasho is a licensed orthopedic surgeon in Maryland.

assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Id. The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See* Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A Complaint "requires a showing, rather than a blanket assertion, of entitlement to relief." *See* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A motion to dismiss for failure to state a claim under Rule 12 (b)(6) of the Federal Rules of Civil Procedure must be granted when the facts of the complaint, and all reasonable inferences arising from those facts, do not support a claim for relief even when viewed in the light most favorable to the plaintiff. Eastern Shore, Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). Consideration may only be given, however, to allegations of fact and inferences deducible from them, as opposed to merely conclusory charges. Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference"). Moreover, the Court need not accept the legal conclusions drawn from a plaintiff's factual allegations, nor need it accept as true unwarranted inferences, unreasonable conclusions or arguments. Eastern Shore, 213 F.3d at 180. A complaint will survive a Rule 12(b)(6) motion to dismiss only if it sets forth enough facts to state a claim for relief that is plausible on its face and the factual allegations are sufficient to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

1. **COUNT I (EMTALA) OF PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   **(a) The History and Requirements of EMTALA**

   In 1986, Congress enacted the Emergency Medical Treatment & Labor Act (EMTALA) to ensure public access to emergency services regardless of ability to pay. *See generally* Baber v. Hospital Corp. of America, 977 F.2d 872 (1992). The EMTALA provisions were enacted to address a growing concern to prevent 'patient dumping,' which is defined as the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions were stabilized." *See* Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 856 (4th Cir. 1994). The Act accordingly imposes two principal obligations on hospitals. First, it requires that when an individual seeks treatment at a hospital's emergency room, "the hospital must provide for an appropriate medical screening examination…to determine whether or not an emergency medical condition" exists. *See* 42 U.S.C. § 1395dd(a). Second, if the screening examination reveals the presence of an emergency medical condition, the hospital ordinarily must "stabilize the medical condition" before transferring or discharging the patients. 42 U.S.C. § 1395dd(b)(1); *see also* Vickers v. Nash General Hospital, Inc., 78 F.3d 139 (4th Cir. 1996). The EMTALA statute is otherwise referred to as the "anti-dumping" statute, as its goal was to prevent hospitals from "dumping" indigent patients on other facilities due to their financial limitations. In short, EMTALA was enacted to prevent disparate treatment of patients presenting with emergency medical conditions.

   Federal courts have routinely noted that EMTALA is an "anti-dumping" statute and is **not** a federal **malpractice** statute. *See e.g.,* Bryan v. Rector & Visitors of Univ. of Va., 95 F.3d 349, 351(4th Cir.1996). The Act does not impose any duty on a hospital requiring that the

4

screening result in a correct diagnosis. *See* id. Federal courts have noted that EMTALA is not a malpractice statute and its "avowed purpose ... was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care." Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir.1992). Rather, Congress deliberately left the establishment of malpractice liability to state law, limiting EMTALA's role to imposing on a hospital's emergency room the duty to screen all patients as any paying patient would be screened and to stabilize any emergency condition discovered. Id. at 879; *see also* Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1039 (D.C.Cir.1991). "Questions regarding whether a physician or other hospital personnel failed properly to diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery." *See* Baber, 977 F.2d at 880.

### (b) EMTALA Does Not Apply To The Facts Of The Amended Complaint As The Plaintiff Was Evaluated, Stabilized and Treated In The Emergency Department at Suburban Hospital.

The Plaintiff contends that the Defendants violated EMTALA in failing to transfer the patient to another facility as a result of an injured finger. *See generally* Amended Complaint as Exhibit 1. The Plaintiff's reliance on EMTALA is unfounded against Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., or River Elliott, M.D. As stated in the Amended Complaint, the Plaintiff sustained an injury to his finger and was transported by ambulance to Suburban Hospital. *See* Exhibit 1 at ¶¶ 12, 47 & 51. The Plaintiff was examined by a Physician's Assistant as well as an Emergency Room physician at Suburban Hospital on April 15, 2014. *See* id. at ¶¶ 16, 17 & 35. The Plaintiff claims he insisted that he be transported to the Curtis National Hand Center in Baltimore.[3] *See* id. at ¶¶ 20 & 21. The Emergency Department at Suburban Hospital contacted an orthopedic surgeon who was available for a consultation at

---

[3] The Curtis National Hand Center has a location at MedStar Union Memorial Hospital.

5

Suburban Hospital. *See* id. at ¶¶35 & 36. The Plaintiff was examined by an orthopedic surgeon in the Emergency Department at Suburban Hospital on April 14, 2015. *See* id. at ¶ 36. The orthopedic surgeon Dr. James Gosha[4] [sic] stated "Yeah, I can fix that" and took the patient to surgery at 7:30 p.m. for his injured finger on April 15, 2014. *See* id. at ¶ 36. The Plaintiff claims medical malpractice as a result of the finger surgery performed by Dr. James Gasho and a violation of EMTALA for the above-listed events.

Based upon the facts as articulated in the Amended Complaint, there are no facts sufficient to state a claim upon which relief can be granted against these Defendants. There is no dispute that the patient was examined in the Emergency Department of Suburban Hospital, was stabilized in the Emergency Department, was evaluated by an orthopedic surgeon in the Emergency Department and had surgery performed that same day at Suburban Hospital. *See* Exhibit 1. These facts are insufficient to sustain an EMTALA violation against Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., or River Elliott, M.D. The patient was never evaluated by these Defendants. The patient was never transported to Defendant Union Memorial Hospital nor was he required to be transferred. The patient was never treated by Defendant Dr. River Elliott. Orthopedic surgeon Dr. James Gosha was available for consultation at Suburban Hospital and the consultation took place. *See* Exhibit 1. Dr. James Gosha told the patient it was an injury he could fix and the patient underwent surgery on his finger with Dr. James Gosha. *See* Exhibit 1. There was no reason for the patient to be transferred to Union Memorial Hospital, Inc., as there were adequate services available at Suburban Hospital as well as an orthopedic surgeon who performed surgeon on the patient. Under EMTALA, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the

---

[4] Dr. James Gasho is a licensed orthopedic surgeon in Maryland.

6

emergency department, to determine whether or not an emergency medical condition exists. *See* 42 U.S.C. § 1395dd(a). Due to the fact that Suburban Hospital had the capabilities to handle the finger injury, EMTALA provisions were not implicated. For these reasons alone, there are no facts to establish an EMTALA violation against these Defendants.

### (c) There Is No Cause Of Action Against A Private Physician Under EMTALA Law; therefore, Defendant Dr. River Elliot Should Be Dismissed.

The EMTALA statute does not give patients private cause of action against doctors for failing to provide appropriate screening, stabilizing or transferring the patient without first providing stabilizing treatment. *See* Social Security Act § 1867 (d)(2)(A), (e)(2), as amended, 42 U.S.C.A. § 1395dd(d)(2)(A), (e)(2), *see also* Baber v. Hospital Corp. of America, 977 F.2d 872, 880 (4th Cir.1992) ("[T]he statute's legislative history demonstrates that Congress intended to limit the patient's right to recover damages for violations of EMTALA to suits against hospitals."). Thus, the statute creates no private right of action against individual physicians. *See id.* at 876. The statute permits claims only against hospitals for EMTALA violations. *See id.* EMTALA does not provide a cause of action for routine charges of misdiagnosis or malpractice. *See* Vickers v. Nash General Hospital, Inc., 78 F.3d 139, 143 (4th Cir. 1996). Other federal circuits have uniformly concluded that a private cause of action under EMTALA is available ***against hospitals only***, not against individual physicians. *See e.g.*, Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1257-57 (9th Cir. 1995); King v. Ahrens, 16 F.3d 265, 271 (8th Cir. 1994); Delaney v. Cade, 986 F.2d 387, 393-94 (10th Cir. 1993). Therefore, Defendant Dr. River Elliott cannot be held liable under EMTALA and should be dismissed as a matter of law.

## 2. COUNT II (MEDICAL NEGLIGENCE & MEDICAL MALPRACTICE) OF PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### (a) Plaintiff's Failure to Comply with the Health Care Malpractice Act ("the Act"), Maryland Code Ann. Courts and Judicial Proceedings Article §3-2A-01, et. seq. mandates dismissal.

The Plaintiff alleges in Count II of his Amended Complaint titled "Medical Negligence & Medical Malpractice" that the "Defendants were medically negligent and committed medical mal-practice to reject an urgent request to accept a patient (Plaintiff) transfer from Suburban Hospital E.R. dept. where the E.R. Dept. physician clearly stated that there were no available specialists to see or treat the patient and the patient needed a higher level of care than they could provide." *See* Exhibit 1 at ¶ 62. There is no valid cause of action for medical malpractice against any of the Defendants in this matter due to the fact that there was no care and treatment rendered by these Defendants and no patient-physician relationship. In order to establish a claim for negligence under Maryland law, a party must prove four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *See* Grimes v. Kennedy Krieger Institute, Inc., 366 Md. 29, 85, 782 A.2d 807, 841 (2001) (footnote and emphasis omitted) (*quoting* Rosenblatt v. Exxon, 335 Md. 58, 76, 642 A.2d 180, 188 (1994)). The threshold element is the question of whether the defendant owes a legal duty towards the injured party. *See* Sterling v. Johns Hopkins Hospital, 145 Md.App. 161, 802 A.2d 440 (2002). The existence of a legal duty is a question of law to be decided by the court. *See* Valentine v. On Target, Inc., 353 Md. 544, 727 A.2d 947 (1999). The duty of care owed to an individual in the medical context is based primarily on the existence of the physician-patient relationship. *See id.* In this case, there was

no physician-patient relationship between the Defendants and the Plaintiff. Defendant Dr. River Elliott did not provide any care or treatment to the plaintiff and had no direct contact with the plaintiff. *See* Sterling v. Johns Hopkins Hospital, 145 Md.App. 161, 802 A.2d 440 (2002). Maryland courts have held that a physician-patient relationship may arise by implication, for purposes of medical malpractice, where a physician takes affirmative action to participate in the care and treatment of a patient; however, where the treating physician exercises his or her own independent judgment in determining whether to accept or reject a consulting physician's advice, the consultative physician should not be regarded as a joint provider of medical services with respect to the patient. *See* id.; *see also* Dingle v. Belin, 358 Md. 354, 367, 749 A.2d 157, 164 (2000) (quoting Hoover v. Williamson, 236 Md. 250, 253-254, 203 A.2d 861, 862 (1964). Even when a physician may be "on call," a physician-patient relationship is not established unless there has been affirmative active to participate in the care and treatment of the patient. *See* Sterling v. Johns Hopkins Hospital, 145 Md.App. 161, 802 A.2d 440 (2002) (*finding that as the "accepting hospital" was not currently treating the patient and thus did not establish a responsibility towards the patient*). There is no physician-patient relationship when the doctor never examines the patient or never independently reviewed or analyzed the patient's medical records. *See* Gilbert v. Miodovnik, 990 A.2d 983 (D.C. App. 2010) (*no physician duty to patient found to exist when nurse midwife discussed treatment with physician on only one occasion*); s*ee also* Bessenyei v. Raiti, 266 F.Supp.2d 408, 413 (D.Md.2003) (*consulting physician had no duty where he discussed the case with an emergency room doctor who retained "decision-making authority over plaintiff's course of treatment"*); *see also* Schrader v. Kohout, 239 Ga.App. 134, 522 S.E.2d 19, 22 (1999) (*factual record did not reveal "acceptance of direct responsibility and control"*); *see also* Hill v. Kokosky, 186 Mich.App. 300, 463 N.W.2d 265, 268 (1990)

9

(*consulting physician had no duty where the treating practitioners "were not under his direction or control"*).  Here, Dr. River Elliott never accepted the patient and the patient was never transferred to his care.  There was no affirmative action on Dr. River Elliott's part.  Therefore, there can be no cause of action for medical malpractice against Defendant Dr. River Elliott.

Even *assuming arguendo* that there was a physician-patient relationship between the plaintiff and Defendant Dr. River Elliott, in order to claim medical negligence in Maryland, the plaintiff is required to file his claim first with the Maryland Health Claims Dispute Resolution Office.  The Maryland Health Care Malpractice Act, as codified in the Maryland Code, Courts & Judicial Proceedings Article 3-2A-01, *et seq*., ("the Act") provides, in part, that all medical malpractice claims against a health care provider must be filed *first* with the Health Care Alternative Dispute Resolution Office ("HCADRO") and that filing in HCADRO is a <u>mandatory condition precedent</u> to filing a claim in this Court.   *See* Cts. & Jud. Proc. Art. Section 3-2A-02, and 3-2A-04(a)(1)(i) and (b) (*emphasis added*); *see also* <u>Lewis v. Waletzky</u>, 576 F.Supp.2d 732, 736 (D.Md.2008); <u>Jones v. Bagalkotakar, M.D., P.A.</u>, 750 F.Supp.2d 574 (D.Md.2010).  When a Plaintiff fails to comply with the mandatory condition precedent of first filing his claim with the HCADRO as required by law, the remedy is dismissal, without prejudice.  *See* Cts. & Jud. Proc. Art. Sections 3-2A-02(a); 3-2A-04(a),(b); *see also* <u>Walzer v. Osborne</u>, 395 Md. 563, 585 (2006) (finding that a failure to comply with the statute mandates dismissal; and holding that the legislative mandate that the Act be followed as a precondition to invoking the general jurisdiction of a court, is analogous to the doctrine of exhaustion of administrative remedies and that when the General Assembly has established a procedure for a special kind of case, so strong is the public policy that the litigant follow said procedure that the Court will, *sua sponte*, vacate judgment and order an action dismissed where the litigants have failed to follow said procedure);

*see also,* D'Angelo v. St. Agnes Healthcare, Inc., 157 Md. App. 631 (2004), *cert. denied*, 284 Md. 158 (2004) (finding dismissal appropriate for party's failure to comply with statutory procedures).

In addition to first filing in the HCADRO, the Act requires a plaintiff to meet other statutory requirements as well, including the filing of a valid Certificate of Qualified Expert ("CQE") in HCADRO, prior to pursuing a claim in this court. *See* Md. Code Ann., Cts. & Jud. Pro. Section 3-2A-04(b)(1); *see also* Rowland v. Patterson, 882 F.2d 97, 99 (4th Cir.1989). The CQE must attest to the departure from the standards of care and that the alleged departure from the standards of care proximately caused the alleged injury. The CQE must also identify the specific healthcare provider who allegedly breached the standard of care. *See* D'Angelo v. St. Agnes Health Care, 157 Md. App. 631, 853 A.2d 813 (2004). In addition, the CQE must consist of both the certificate and the attesting report. *See* Walzer v. Osborne, 395 Md. 563, 579 (2006). The filing of a proper and valid CQE is an "indispensable step in the arbitration process" and the failure to file a proper certificate is tantamount to not having filed a certificate at all. *Id*. at 579, 582, 584-586; *see also*, McCready Mem'l Hosp. v. Hauser, 330 Md. 497, 512, 624 A.2d 1249, 1257 (1993), and D'Angelo at 631, 645.

In the present case, the Plaintiff has failed to meet the mandatory requirements set forth under the Act in the following respects: (1) the Plaintiff failed to first file his claim in the HCADRO; (2) the Plaintiff failed to file any Certificate of Qualified Experts at all. The failure to first file a claim with the HCADRO mandates dismissal as it is a precondition to invoking the general jurisdiction of this Court.

Filing this action in Maryland federal court without first filing in the Health Claims Alternative Dispute Resolution Office is improper because the Maryland Health Care

Malpractice Claims Act, Md. Cts. & Jud. Proc. Code Ann. §3-2A-01, et seq., requires arbitration as a **condition precedent** to the institution of a court action. *See* Tranen v. Aziz, 304 Md. 605, 500 A.2d 636 (1985) (*emphasis added*). As Plaintiff has not filed a waiver of the arbitration proceeding, the current action against the Defendants is improper and should be dismissed. See, §3-2A-02(a)(2) ("a malpractice case may not be brought or pursued in any court of this state except in accordance with this subtitle"). When a Plaintiff alleges, as is the case here, that a physician caused a medical injury arising or resulting from the failure to render health care and alleges damages in excess of Thirty Thousand Dollars ($30,000), certain mandatory conditions precedent must be followed. Specifically, under the long-established law of Maryland, filing a claim for personal injury against a health care provider in the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") is a mandatory condition precedent to instituting a court action. *See*, Maryland's Healthcare Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §3-2A-02; Tranen v. Aziz, 500 A.2d 636, 639, 304 Md. 605 (1985).

Accordingly, pursuant to the clear wording of that statue, Plaintiff has failed to comply with the statutory preconditions for this Court to exercise jurisdiction over the subject matter of this action as to Count II "Medical Negligence & Medical Malpractice." Therefore, Count II should also be dismissed as a matter of law.

### III. CONCLUSION

WHEREFORE, for the aforementioned reasons, Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D. respectfully request that this Honorable Court grant Defendants' Preliminary Motion to Dismiss and Dismiss With Prejudice Plaintiff's Amended Complaint as to Defendants The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D.

Respectfully submitted,


\_\_/s/ Jennifer E. Phillips_____
Daniel C. Costello, Esquire
Maryland Federal Bar No.: 08010
*dcc@wlekn.com*
Jennifer E. Phillips, Esquire
Maryland Federal Bar No.: 15167
*jep@wlekn.com*
Wharton, Levin, Ehrmantraut & Klein, P.A.
104 West Street
Annapolis, MD 21404-0551
(410) 263-5900 (ph)
(410) 280-2230 (fax)
*Counsel for Defendants*
*The Union Memorial Hospital, Inc.,*
*MedStar Health, Inc., and River Elliott, M.D.*

## Certificate of Service

I HEREBY CERTIFY that on this 17th day of August, 2016 the foregoing was served, electronically and via first class mail, postage prepaid, upon:

Jerry W. Mullins
7031 Southerland Circle
Salem, VA 24153
*Pro se Plaintiff*

Mary Alane Downs, Esquire
Morgan Carlo Downs & Everton, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
*Counsel for Defendant*
*Neil Zimmerman, M.D.*

Michael von Diezelski, Esquire
LeClair Ryan
180 Admiral Cochrane Dr., Suite 520
Annapolis, MD 21401
*Counsel for Defendant Suburban Hospital Healthcare*
*System Inc.*

Erica C. Mudd, Esq.
Armstrong, Donohue, Ceppos, Vaughan and Rhoades, Chtd.
204 Monroe Street, Suite 101
Rockville, MD 20850
*Counsel for Defendants Feledy, Jr., M.D., Bethesda Emergency Associates, L.L.C., and*
*Leonard, M.D.*

                                                /s/ Jennifer E. Phillips
                                                Jennifer E. Phillips, Esquire
                                                Maryland Federal Bar No.: 15167

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERRY W. MULLINS | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.: 16-cv-1113-PX |
| | | (*consolidated with PX-16-1114*) |
| THE UNION MEMORIAL HOSPITAL INC., d/b/a MedStar Union Memorial Hospital, et. al. | * * | |
| Defendants | * | |

\* \* \* \* \* \* \*

## DEFENDANTS' REQUEST FOR HEARING ON ITS PRELIMINARY MOTION TO DISMISS

COME NOW Defendants, The Union Memorial Hospital, Inc., MedStar Health, Inc., and River Elliott, M.D., by and through counsel, Daniel C. Costello, Esq., Jennifer E. Phillips, Esq., and Wharton Levin Ehrmantraut & Klein, PA, and hereby requests a hearing on its Preliminary Motion to Dismiss.

   /s/ Jennifer Phillips_____
Daniel C. Costello, Esquire
Maryland Federal Bar No.: 08010
*dcc@wlekn.com*
Jennifer E. Phillips, Esquire
Maryland Federal Bar No.: 15167
*jep@wlekn.com*
Wharton, Levin, Ehrmantraut & Klein, P.A.
104 West Street
Annapolis, MD 21404-0551
(410) 263-5900 (ph)
(410) 280-2230 (fax)
*Counsel for Defendants*
*The Union Memorial Hospital, Inc.,*
*MedStar Health, Inc., and River Elliott, M.D.*

## Certificate of Service

I HEREBY CERTIFY that on this 17th day of August, 2016 the foregoing was served, electronically and via first class mail, postage prepaid, upon:

Jerry W. Mullins
7031 Southerland Circle
Salem, VA 24153
*Pro se Plaintiff*

Mary Alane Downs, Esquire
Morgan Carlo Downs & Everton, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
*Counsel for Defendant*
*Neil Zimmerman, M.D.*

Michael von Diezelski, Esquire
LeClair Ryan
180 Admiral Cochrane Dr., Suite 520
Annapolis, MD 21401
*Counsel for Defendant Suburban Hospital Healthcare*
*System Inc.*

Erica C. Mudd, Esq.
Armstrong, Donohue, Ceppos, Vaughan and Rhoades, Chtd.
204 Monroe Street, Suite 101
Rockville, MD 20850
*Counsel for Defendants Feledy, Jr., M.D., Bethesda Emergency Associates, L.L.C., and Leonard, M.D.*

                                              /s/ Jennifer E. Phillips
                                              Jennifer E. Phillips, Esquire
                                              Maryland Federal Bar No.: 15167