IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JERRY W. MULLINS, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. PX 16-1113 |
| SUBURBAN HOSPITAL HEALTHCARE SYSTEMS, INC. et al., | * |
| Defendants. | * |

******

**MEMORANDUM OPINION**

Pending are separate motions to dismiss filed by Defendants Suburban Hospital Healthcare Systems, Inc., Dr. Jules Alexander Feledy, Jr., Bethesda Emergency Associates, LLC, Dr. Matthew Leonard, Dr. River Elliott, MedStar Health, Inc., Union Memorial Hospital, Inc., and Johns Hopkins Health Systems Corporation. ECF Nos. 23, 24, 25, 27, 28, 29. The relevant issues have been fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. The motions to dismiss are granted in part and denied in part. Plaintiff's motion to file a second amended complaint (ECF No. 36) and his motion to file a surreply (ECF No. 47) are also pending. Both motions are denied.

**I.    BACKGROUND**

The facts outlined here are taken from the amended complaint and construed in the light most favorable to Plaintiff Jerry Mullins.[1]

---

[1] As explained below, this is a consolidated case. The Lead Case is PX 16-1113 and references by the Court made to the "amended complaint" refer to the amended complaint filed in the Lead Case, see PX 16-1113, ECF No. 5.

A.      **Factual History**

On April 15, 2014, Plaintiff Jerry Mullins ("Plaintiff") sustained a severe injury to his right hand while working with a spinning fan blade. Amended Complaint, ECF No. 5 at 2. A bystander called 911 and an ambulance arrived soon thereafter. Plaintiff asked the ambulance crew if they would transport him directly to a dedicated hand center so that his injury could be treated by a specialist. The ambulance crew informed Plaintiff that the closest hand center was the Curtis National Hand Center at MedStar Union Memorial Hospital in Baltimore, Maryland, and it would take the ambulance about one hour to get there. The crew instead stopped at the nearby Suburban Hospital in Bethesda, Maryland so that Plaintiff could receive pain medication and be stabilized before transporting him to Baltimore. *Id.* at 3.

Upon entering Suburban Hospital's emergency room, Plaintiff was approached by a triage nurse who administered a numbing agent and placed the hand in a split. The emergency room's staff then took Plaintiff medical history. The nurse told Plaintiff that because the hospital's lead on-call hand specialist was unavailable, he would be transported to the Curtis National Hand Center in Baltimore after the Hand Center approved the transfer. *Id.* at 4.

At 3:30 pm, approximately three hours after Plaintiff's arrival at the hospital, the attending emergency room physician, Dr. Matthew Leonard, informed Plaintiff that the Hand Center had rejected the transfer. An hour later, Dr. James Gosha, a licensed orthopedic surgeon, approached Plaintiff, studied his hand, and confirmed that he would treat Plaintiff's injuries. *Id.* at 5–6. Dr. Gosha performed surgery on Plaintiff that night and when Plaintiff awoke the next morning, he discovered that Dr. Gosha had placed a "huge external fixture on his finger." *Id.* at 6. Dr. Gosha then met with Plaintiff to discuss the extent of the injury and proper care of the wound. *Id.* at 6. He was discharged from the hospital later that day.

Upon returning to his home in Virginia, Plaintiff sought further treatment from the UVA Hand Center in Charlottesville, Virginia. The hand specialists at the UVA Center were "appalled by the device used to hold the finger in place." *Id.* at 7.  They explained to Plaintiff that a hand specialist would use a much smaller device to stabilize the finger designed to facilitate healing without overly restricting the finger's range of motion. Plaintiff alleges that the UVA hand specialists believed the device used by Dr. Gosha was much too large for the job and the screws Dr. Gosha used penetrated the tendons that crossed the topside of the finger. While the hand specialists believed the procedure Dr. Gosha performed was done poorly, there was little they could do to repair the finger without risking further injury.

Plaintiff alleges that he has waited almost two years to give his injuries the opportunity to heal before filing a lawsuit. But despite time and physical therapy, his finger remains impaired, which "has handicapped his normal daily activities including his occupation, his hobbies, [and] his normal enjoyment of life." *Id.* at 5.

**B.    Procedural History**

On or about April 14, 2016, Plaintiff, appearing *pro se*, filed two separate complaints ("Complaint I" and "Complaint II") in this Court related to the care he received for his hand injuries. The complaints were docketed as separate cases, Civ. No. PX 16-1113 (Complaint I) and Civ. No. PX 16-1114 (Complaint II).

In Complaint I, Plaintiff brings claims against Johns Hopkins Suburban Hospital and Dr. Jules Alexander Feledy Jr. for violations of the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd *et seq.* ("EMTALA") and for medical malpractice. On June 30, 2016, Plaintiff filed an amended complaint, splitting Johns Hopkins Suburban Hospital into two separate defendants; Suburban Hospital Healthcare Systems, Inc. (SHHS) and Johns Hopkins Health

Systems Corporation (JHHS). He also added as defendants Bethesda Emergency Associates LLC and Dr. Matthew Leonard, MD.

In Complaint II, Plaintiff brings claims against MedStar Union Memorial Hospital, Dr. River M. Elliott, and Dr. Neil Zimmerman for violations of EMTALA and for medical malpractice. On June 29, 2016, Plaintiff filed an amended complaint again splitting a defendant, this time Medstar Union Memorial Hospital, into two different defendants; Union Memorial Hospital Inc. and Medstar Health Inc.[2] On August 4, 2016, the Court consolidated both cases, designating Civ. No. PX 16-1113 as the Lead Case.

Now before the Court are the Defendants' six separate motions to dismiss. ECF Nos. 23, 24, 25, 27, 28, 29. Each motion argues that the alleged conduct does not amount to an EMTALA violation and that Plaintiff's medical malpractice claim must be dismissed because Plaintiff failed to first file his case in Health Claims court pursuant to Maryland's Health Care Malpractice Claims Act ("HCMCA") requirements. Plaintiff has also filed a motion for leave to file a second amended complaint (ECF No. 36) and a motion to file a surreply (ECF No. 47). For the following reasons, the Court will grant the motions to dismiss in part and deny Plaintiff's motions.

## II.     STANDARD OF REVIEW

Certain Defendants have filed their motions to dismiss under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, construing Plaintiff's failure to first proceed under the HCMCA as a jurisdictional bar. *See, e.g.*, ECF No. 27 at 2. This Court and the Maryland Court of Appeals has made clear, that "certain requirements under the HCMCA . . . are conditions precedent to the filing of a medical malpractice suit in court, but do not constitute a

---

[2] The defendants will be referred to collectively as the "Defendants" for the remainder of this Memorandum Opinion.

jurisdictional limitation." *Elnadi v. Upinder Singh, DDS, PC*, No. ELH-12-1762, 2013 WL 1855977, at *2 (D. Md. Apr. 30, 2013) (citing *Carroll v. Konits*, 400 Md. 167, 172 (2006)). Instead, a prefiling requirement is most appropriately treated as a substantive element of state law rather than as a lack of subject matter jurisdiction. *Webster v. Simmonds*, No. DKC 2003-3306, 2005 WL 14886, at *2 (D. Md. Jan. 3, 2005). Therefore, the Court will consider the Defendants' motions under Fed. R. Civ. P. 12(b)(6).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well–pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.

1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (citations and internal quotation marks omitted)). Ultimately, a complaint must "'permit the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Liberal construction means that the court will read the pleadings to state a valid claim when at all possible from the available facts; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB–12–969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) ("[E]ven a pro se complaint must be dismissed if it does not allege a plausible claim for relief.") (citation and internal quotation marks omitted).

### III. ANALYSIS

### A. EMTALA Violations

Count One of Plaintiff's amended complaint alleges that the Defendants violated the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA" or "Act") by allowing a general orthopedic surgeon to operate on Plaintiff's hand instead of transferring

Plaintiff, as he repeatedly requested, to a hand specialist with the appropriate training and skill to treat Plaintiff's injury.

> EMTALA's provision allowing civil enforcement for personal injury reads as follows:
>
> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A). By its terms, an individual may not bring an action under the Act against anyone other than a "participating hospital," defined as a hospital that receives Medicare funding.[3] 42 U.S.C. § 1395dd(e)(2); *see also Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 877 (4th Cir. 1992). Plaintiff recognizes as much and volunteered to dismiss his EMTALA claims against Johns Hopkins Health Systems Corporation, Medstar Health, Inc., Dr. River Elliott, Dr. Matthew Leonard, Dr. Neil Zimmerman, and Dr. Jules Alexander Feledy. ECF No. 37 at 4; ECF No. 38 at 4. The Court will also dismiss the EMTALA claim against Bethesda Emergency Associates, LLC because it is not a hospital but an emergency medicine physician group, ECF No. 25-1 at 2. The Court will also accept as true for the purpose deciding this motion Plaintiff's argument that Suburban Hospital Healthcare Systems Inc. and Union Memorial Hospital Inc. are participating hospitals.

The amended complaint seems to allege that Suburban Hospital violated EMTALA for its failure to properly treat his injury, resulting in a permanently deformed hand. EMTALA is a limited "anti-dumping" statute, not a federal malpractice statute. *Bryan v. Rectors & Visitors of Univ. of Virginia*, 95 F.3d 349, 351 (4th Cir. 1996). "Congress's sole purpose in enacting

---

[3] The Act may be directly enforced against physicians too, but only by suit brought by the Department of Health and Human Services's Centers for Medicare and Medicaid Services ("CMS") and the OIG to bar her participation in Medicare programs and/or to seek administrative sanctions in the form of civil monetary penalties. 42 U.S.C. §§ 1395dd(d)(1) & (2)(B).

EMTALA was to deal with the problem of patients being turned away from emergency rooms for non-medical reasons." *Id. See Brooks v. Maryland Gen. Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993) (recognizing that "[u]nder traditional state tort law, hospitals are under no legal duty to provide [emergency care to all]" and holding that EMTALA's purpose is simply to impose on hospitals the legal duty to provide such emergency care). The Act only requires that participating hospitals screen all incoming patients to determine whether they have an emergency medical condition and stabilize any emergency medical condition before transferring the patient. 42 U.S.C. § 1395dd(b)(1).

Here, Plaintiff was not turned away from Suburban Hospital. Rather, he was screened, stabilized, diagnosed, and admitted. Doctors at Suburban also operated on his hand and discharged him only after consultation with the orthopedic surgeon. Therefore, Suburban Hospital complied with EMTALA's requirements. Thus, regardless of when the hospital's duty under EMTALA ended, which is still debated, the facts make clear that the Suburban Hospital Defendants complied with EMTALA. *Compare Bryan v. Rectors & Visitors of the Univ. of Vir.*, 95 F.3d 349 (4th Cir. 1996) ("It seems manifest to us that the stabilization requirement was intended to regulate the hospital's care of the patient only in the immediate aftermath of the act of admitting her for emergency room treatment and while it considered whether it would undertake longer-term full treatment or instead transfer the patient to a hospital that could and would undertake the treatment."), *with Thornhill v. Jackson Par. Hosp.*, 184 F. Supp. 3d 392, 398 (W.D. La. 2016) ("[A] hospital's duty under the statute ends when the hospital admits the patient for inpatient care so long as the admittance is in good faith and not a subterfuge to escape liability under EMTALA.") (citing *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1169 (9th Cir. 2002)).

Whether Suburban Hospital properly cared for and treated Plaintiff is, if anything, a question left to state tort law. As the Fourth Circuit Court of Appeals has explained, construing EMTALA to reach claims sounding in medical malpractice "would eviscerate any distinction between EMTALA actions and state law actions for negligent treatment and misdiagnosis." *Vickers v. Nash Gen. Hosp., Inc.*, 78 F.3d 139, 141 (4th Cir. 1996). At its core, EMTALA's focus is on eliminating disparate treatment, not the correctness of the treatment. *See id.* at 143. Under Plaintiff's reasoning, every claim of negligent treatment "could be recast as an EMTALA claim, contravening Congress' intention and this circuit's repeated admonition that EMTALA not be used as a surrogate for traditional state claims of medical malpractice." *Id.* at 141. Accordingly, the motion to dismiss filed by Suburban Hospital, ECF No. 23, is granted on Count One.

Liberally construed, the amended complaint also alleges that Union Memorial Hospital violated EMTALA by refusing Suburban Hospital's request to have Plaintiff transferred to Union Memorial Hospital's Curtis Hand Center. EMTALA includes a "nondiscrimination" provision, which provides that:

> A participating hospital that has specialized capabilities or facilities (such as burn units, shock-trauma units, neonatal intensive care units, or (with respect to rural areas) regional referral centers as identified by the Secretary in regulation) shall not refuse to accept an appropriate transfer of an individual who requires such specialized capabilities or facilities if the hospital has the capacity to treat the individual.

42 U.S.C. § 1395dd(g). This is often referred to as EMTALA's "reverse-dumping" provision. According to the allegations in the amended complaint, Union Memorial Hospital is a participating hospital that has specialized capabilities for hand injuries, Plaintiff was an individual who required such specialized capabilities or facilities, Union Memorial Hospital had the capacity to treat Plaintiff, and Union Memorial Hospital refused to accept Suburban

9

Hospital's transfer request. Because these allegations are sufficient to survive dismissal at this stage, the motion to dismiss filed by Union Memorial Hospital, MedStar Health, and Dr. River Elliott (ECF No. 27) will be denied with respect to Union Memorial Hospital on Count One. This motion will be granted with respect to the remaining defendants on Count One.

**B.     Medical Malpractice Claims**

Count Two of the amended complaint alleges that the defendants as a collective group committed "medical negligence" and "medical malpractice" by denying Plaintiff's request to be transported to a hand trauma center when the defendants knew that Suburban Hospital's on-call hand specialists were not available. Amended Complaint, ECF No. 5 at 10–11. Plaintiff also alleges that he was not treated in a timely manner and was eventually operated on by a surgeon without the necessary specialized skills to treat his particular injury. *Id.* at 11–12.

Maryland's Health Care Malpractice Claims Act ("HCMCA") establishes the state administrative claims procedure for medical malpractice actions. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3–2A–01 *et seq.* Prior to any judicial action, claims "against a health care provider for medical injury" must be submitted to the Health Care Alternative Dispute Resolution Office with "a certificate of qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." *Id.* § 3–2A–04(b)(1)(i). This certificate must also be accompanied by "a report of the attesting expert." *Id.* § 3–2A–04(b)(3)(i).

Compliance with HCMCA's requirements is "not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit in this Court or the Maryland state courts." *Wilever v. United States*, 775 F. Supp. 2d 771, 777 (D. Md. 2011) (citations omitted). Thus, a medical malpractice lawsuit filed in either state or federal court that fails to first meet the

conditions of HCMCA "shall be dismissed, without prejudice." *see Willever v. United States*, 775 F. Supp. 2d 771, 784 (D. Md. 2011) ("Conditions precedent are not waivable because they are so fundamental to a plaintiff's right to bring a cause of action in the first instance. If a plaintiff fails to comply with HCMCA's expert certificate and report requirements, his case *must* be dismissed without prejudice.") (emphasis in original) (citing *Carroll v. Konits*, 400 Md. 167, 182 n.12 (2007)); *Hampel v. United States*, 706 F. Supp. 2d 629, 631 (D. Md. 2010) (dismissing Plaintiff's claim for failure to comply with HCMCA requirements).

Here, Plaintiff failed to allege that he adhered to the requirements of HCMCA. Therefore, the motions to dismiss filed by the Defendants are granted with respect to Count II. The claim is dismissed without prejudice.

C.     **Plaintiff's Motion for Leave to File an Amended Complaint**

Plaintiff filed his first complaint on April 14, 2016, and an amended complaint on June 30, 2016. On October 4, 2016, Plaintiff filed a motion for leave to amend his first amended complaint. ECF No. 36. This motion was filed after the Defendants' filed their motions to dismiss and on the same day Plaintiff began responding to the Defendants' motions. He proffered that he wished to delete certain defendants from his amended complaint and "add references and case law in line with the filed Response to the Defendants' Motion to Dismiss." *Id.*

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, courts "should freely give leave [to amend pleadings] where justice so requires." Moreover, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999).

Rule 8(a) of the Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Supporting case law in the pleading is not required. Further, none of Plaintiff's proposed amendments would affect the outcome of the instant motions, rendering the amendment futile. Finally, as explained *supra*, the Court has dismissed certain defendants as Plaintiff requested in his responses to Defendants' motions to dismiss. *See* ECF No. 37 at 4; ECF No. 38 at 4. Thus, Plaintiff's motion to amend is denied.

### D.      Plaintiff's Motion to File a Surreply

On November 3, 2016, Plaintiff filed a "Motion to Allow Plaintiff to Respond to Defendants' Response to Plaintiff's Original Response to the Defendants' Original Motion to Dismiss." ECF No. 47. Surreply memoranda are disfavored in this District, *see Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013); *see also* Local Rule 105.2.a (D. Md. 2014) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). The Court may grant leave to file a surreply "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x. 960 (4th Cir. 2004) (per curiam). Here, Plaintiff's surreply does not change the Court's analysis and so the motion is denied.

### IV.     CONCLUSION

For the foregoing reasons the following motions to dismiss are granted: ECF Nos. 23, 24, 25, 28, 29. With respect to these motions, Count One is dismissed with prejudice while Count Two is dismissed without prejudice. Because Count Two is dismissed without prejudice, Plaintiff may refile his medical malpractice claims if and when he has complied with HCMCA's prefiling

requirements. The motion to dismiss filed by Union Memorial Hospital, Inc., MedStar Health, Inc., and Dr. River Elliot, ECF No. 27, is granted in part and denied in part. It is denied with respect to the EMTALA claim against Union Memorial Hospital, Inc., but is granted in all other respects. Accordingly, the single surviving claim is that against Union Memorial Hospital for violations of EMTALA. Plaintiff's motion to amend his first amended complaint, ECF No. 36, is denied as is his motion for leave to file a surreply, ECF No. 47. A separate order will follow.

2/6/2017  
Date

/S/  
Paula Xinis  
United States District Judge