IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JERRY W. MULLINS,

    Plaintiff,

v.                                          Civil Action No. PX 16-1113

THE UNION MEMORIAL HOSPITAL, INC.,
d/b/a MedStar Union Memorial Hospital

    Defendant.

**MEMORANDUM OPINION**

Pending before the Court is Defendant MedStar Union Memorial Hospital's motion for summary judgment.[1] ECF No. 75. Plaintiff Jerry Mullins has opposed the motion, and the matter is now ripe for decision. *See* D. Md. Loc. R. 105.2. No hearing is necessary. *See* D. Md. Loc. R. 105.6. Upon consideration of the parties' briefing and the evidence in the record, the Court GRANTS Defendant's motion.

**I.    Background**

The following facts are undisputed. On April 15, 2014, Plaintiff Jerry Mullins' ("Mullins") finger was injured by a fan blade. ECF No. 5 ¶8, ECF No. 75 at 2. Mullins traveled in an ambulance to John's Hopkins Suburban Hospital ("Suburban"). There, a physician's assistant treated Mullins by applying a numbing agent and splinting his injured hand. ECF No. 5 ¶17, ECF No. 75-1 at 14. Emergency department physician, Dr. Leonard, then examined Mullins. ECF No. 75-1 at 24. Suburban is a Level II Trauma center, with on-call orthopedic and hand specialists. ECF No. 75-1 at 33-39. Dr. Leonard consulted with the first on-call hand

---

[1] This is a consolidated case. Plaintiff initially filed two complaints, docketed as PX 16-1113 and PX 16-1114. The cases were consolidated on August 4, 2016, with PX 16-1113 as the lead case.

1

specialist who was too busy to see Mullins, but suggested contacting the second on-call hand specialist at Suburban Hospital or transferring Mullins to Medstar Union Memorial Hospital ("Union Memorial"). The second on-call hand specialist could not be located. Dr. Leonard also tried to contact the two hand surgeons affiliated with Suburban without success. Dr. Leonard then discussed Mullins' medical situation with Dr. Elliot at Union Memorial. Dr. Elliot advised that after Mullins was seen by a Suburban orthopedic or hand specialist, they should follow up with Union Memorial to determine the appropriate course of care. ECF No. 75-1 at 33-34.

In the interim, Suburban's on-call orthopedic surgeon, Dr. Gasho, evaluated Mullins. Dr. Gasho concluded that Mullins' hand required surgery and advised Mullins of the risks, benefits, and alternatives regarding the surgery. ECF No. 75-1 at 20. Mullins consented to the surgery and did not request a second opinion. ECF No. 75-1 at 20. Mullins' finger currently has not returned to full function and is physically deformed. ECF No. 5 ¶¶49, 55.

As a result, Mullins, pro se, brought claims against Suburban and its affiliates, Union Memorial and its affiliates, and physicians Dr. Feledy (Suburban's on-call hand specialist), Dr. Leonard, Dr. Elliot, and Dr. Zimmerman (Union Memorial's on-call attending physician) for violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and for medical malpractice. *See* ECF. No. 49 at 3-4 (describing claims). On February 6, 2017, the Court dismissed all claims against all defendants except for the EMTALA claim against Union Memorial. ECF No. 49.[2] At the close of discovery, Union Memorial moved for summary judgment. ECF No. 75. Union Memorial argues that Mullins' EMTALA claim fails as a matter of law. For the reasons articulated below, the Court agrees.

---

[2] Mullins' medical malpractice claims were dismissed without prejudice for failure to first file his action with Maryland's Health Care Alternative Dispute Resolution Office. Those claims are now pending in the Circuit Court for Montgomery County, Case No. 449865V (filed June 1, 2018).

2

## II.     Standard of Review

Summary judgment is appropriate when the court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.  Although a pro se party is "given some latitude," he may not avoid summary judgment by "relying on bald assertions and speculative arguments."  *Mansfield v. Kerry*, No. DKC 15-3693, 2016 WL 7383873, at *2 (D. Md. Dec. 21, 2016) (citing *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011)).

**III. Discussion**

The Court previously allowed Mullins' claim against Union Memorial to proceed under EMTALA's "nondiscrimination" provision, on the theory that Union Memorial violated EMTALA when it refused to accept Mullins as an "urgent transfer request." ECF No. 49 at 9-10. Now, Union Memorial argues broadly that Mullins' case falls outside EMTALA because Mullins was stabilized at Suburban, contending that no duty attaches to any medical provider under the Act once a patient is stable. Alternatively, Union Memorial contends that EMTALA does not reach this case because Union Memorial did not have any more specialized forms of care than did Suburban, nor did it have the capacity to accept Mullins as a transfer. Finally, Union Memorial argues that it did not "decline" Mullins as a patient, but instead offered to consult on his care.

"EMTALA was passed by Congress in 1986 in response to a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency conditions were stabilized." *Brooks v. Maryland Gen. Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993). Notably, "[t]he Act was not designed to provide a federal remedy for misdiagnosis or general malpractice," but rather to ensure that hospitals will provide emergency care to all. *Id.* See also *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 880 (4th Cir. 1992) ("The avowed purpose of EMTALA was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care, but instead to provide an 'adequate first response to a medical crisis' for all patients[.]" (quoting 131 Cong. Rec. S13904 (Oct. 23, 1985))).

In addition to the "anti-dumping" provisions that require hospitals to screen and stabilize patients who present to the emergency department for treatment, 42 U.S.C. § 1395dd (a)–(b),

4

EMTALA includes a "nondiscrimination" provision which expressly provides that "participating hospitals" with "specialized capabilities or facilities," may not refuse "an appropriate transfer of an individual who requires such specialized capabilities or facilities if the hospital has the capacity to treat the individual." 42 U.S.C. § 1395dd (g). Known also as the "reverse-dumping" provision of EMTALA, hospitals with such "specialized capabilities" must not refuse transfer if such hospital can provide such necessary services. *See* Ercan E. Iscan, *Emtala's Oft-Overlooked "Reverse Dumping" Provision and the Implications for Transferee Hospital Liability Following St. Anthony Hospital*, 82 Wash. U. L.Q. 1201, 1202 (2004).

Accordingly, assuming that Mullins has demonstrated his condition was not stable and thus warranted transfer, he must also show that Union Memorial, as the putative receiving hospital, possessed "specialized capabilities" relative to the transferring hospital. *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 701 (10th Cir. 2002). Assuming without deciding that Union Memorial is a "participating hospital," and thus covered under EMTALA, Mullins has failed to put forward sufficient evidence to survive summary judgment. The record evidence reflects that Suburban retained on-call hand specialists and orthopedic surgeons. ECF No. 75-1 at 33-39. Indeed, that Mullins had his surgery performed by an orthopedic surgeon at Suburban further supports the relative parity of the two hospitals.[3] Viewing the evidence most favorably to Mullins, he cannot show that Suburban was lacking such "specialized capabilities."

Attempting to generate a genuine dispute of fact in this regard, Mullins submits Union Memorial's webpage to highlight claimed material differences between it and Suburban. ECF No. 81-10. Although this website touts Union Memorial's accomplishments and expertise in the

---

[3] The Court expresses no opinion on whether the surgery was performed within the standard of care, which is the subject of Mullins' separate medical malpractice action. Indeed, "EMTALA is no substitute for state law medical malpractice actions." *Baber*, 977 F. 2d at 880.

relevant field, it offers nothing to advance that Suburban lacked similar specialized capabilities. Mullins also concedes that Suburban is a Level II Trauma Center with both orthopedic and hand specialists on call. ECF No. 81-1 at 3. Because Mullins has not generated sufficient evidence showing Union Memorial is any more "specialized" than Suburban, the EMTALA claim fails. *See St. Anthony*, 309 F.3d at 701 (affirming a finding that "Congress intended th[is] term to encompass those capabilities and facilities which enable a hospital to offer specialized care that is not offered by hospitals that are less well-endowed[.]").

Alternatively, Union Memorial contends that even if Mullins could demonstrate that the hospital was a "specialized facility," the record evidence viewed most favorably to Mullins shows that Union Memorial lacked the capacity to treat him. Federal regulations implementing EMTALA define capacity as "the ability of the hospital to accommodate the individual requesting examination or treatment of the transferred individual. Capacity encompasses such things as numbers and availability of qualified staff, beds and equipment and the hospital's past practices of accommodating additional patients in excess of its occupancy limits." 42 C.F.R. § 489.24 (2013). *See St. Anthony*, 309 F.3d at 701 (applying this regulatory definition). Union Memorial's on-call fellow, Dr. Elliot, attests without contradiction that at the time he received the call about Mullins, Union Memorial's hand specialists were also called to operate on a multi-digit amputation case which would have been triaged as a higher priority than Mullins if he had been accepted as a patient. ECF No. 75-1 at 35. Because of this other surgery, Mullins would not have received treatment at Union Memorial until the next day. *Id.* In contrast, the orthopedic surgeon at Suburban operated on Mullins just a few hours after admission. ECF No. 75-1 at 22, ECF No. 81-1 at 4. Because Mullins has not generated any evidence to challenge

Union Memorial's demonstrated lack of capacity to treat him, the EMTALA claim cannot survive. ECF No. 81 at 13-14. Summary judgment is granted in Union Memorial's favor.[4]

## IV. Conclusion

For the foregoing reasons, Defendant Union Memorial's motion for summary judgment is GRANTED. A separate order follows.

 October 12, 2018              /S/
Date                    Paula Xinis
                      United States District Judge

---

[4] Because the EMTALA claim fails for the reasons discussed above, the Court declines to reach Union Memorial's alternative argument as to whether Dr. Leonard's call to Union Memorial constituted a transfer request rather than a consultation call.